[Crim. No. 3440. Second Dist., Div. One.—April 7, 1941.]

THE PEOPLE, Respondent, v. OREN ELMER LEE, Appellant.

Gladys Towles Root for Appellant.

Earl Warren, Attorney-General, and Bayard Rhone, Deputy Attorney-General, for Respondent.

YORK, P. J.—Appellant was found guilty by the jury of the crime of manslaughter and appeals from the judgment of conviction which was thereafter entered, and also from the order denying his motion for a new trial.

The charge upon which appellant was convicted grew out of a beating administered to John William Kinnemann by appellant under the following circumstances: On July 20, 1940, Mrs. Emily W. Dybens was visiting with Mr. and Mrs. Donaldson at their home in Lynwood; appellant, a miner by occupation, arriving there around 5 o'clock in the afternoon accompanied by Mrs. Dybens' son. Shortly thereafter, appellant procured a bottle of whiskey from his car and he and Mrs. Dybens prepared some drinks in the Donaldson's kitchen which they were about to serve when Mr. Kinnemann (deceased) arrived with some eggs for the Donaldsons, whereupon it was suggested by appellant that Mr. Kinnemann serve the drinks in view of the fact that he was an ex-bartender. Mr. Donaldson, appellant, Mrs. Dybens and deceased each had two drinks when a neighbor, Mr. Gilliam, came in with some groceries for Mrs. Donaldson, whereupon Mr. Gilliam and his wife each had a drink. In the meantime, Mr. Donaldson was eating his dinner and soon after left for the Vultee Aircraft plant where he was employed; the Gilliams returned to their home, thus leaving appellant, Mrs. Donaldson, Mrs. Dybens and Mr. Kinnemann together in the kitchen of the Donaldson home. Mr. Kinnemann then said they would all have another drink and he would have to go; whereupon he served another round of drinks. At this time, appellant spoke to Mr. Kinnemann, saying, "This is my fiancee", referring to Mrs. Dybens. Mr. Kinnemann turned to the latter and said, "Is that so, Emily?" She replied that it was and something was then said about her and appellant going to Reno or Las Vegas that night to be married. Mr. Kinnemann said nothing more but turned around and walked out of the house.

Appellant and Mrs. Dybens then left the Donaldson home and visited neighbors of Mrs. Dybens in Lynwood, where they had several more drinks and talked about their engagement. Later, Mrs. Dybens discovered she had misplaced her purse and, with appellant driving, they returned to the Donaldson residence, but the house being in darkness they sat in the car debating whether or not they would go to the door, when they saw Mr. Kinnemann step off the curb across the street, and as he walked toward the car he said, "What are you two doing back here?" Mrs. Dybens then asked him where Mrs. Donaldson was, and he said she had gone to a show. Mr.

Kinnemann then asked where they had been and Mrs. Dybens told him and also volunteered the information that they had had some drinks, whereupon Kinnemann said, "You are drunk." Appellant spoke up and said, "You cannot talk to my fiancee that way"; to which Kinnemann replied, "Your fiancee, hell; I have known her for six years and she hasn't— didn't tell me anything about it." Appellant said, "She didn't have to tell you nor anyone else," and deceased replied, "Well, you cannot marry her." During this conversation the deceased was shaking his finger at appellant, and Mrs. Dybens turned to him and told him to keep still, whereupon he (deceased) said, "Well, Emily, all I can say is that you are a damn fool." At this point, appellant, who was sitting in his car back of the steering wheel, reached out and struck Kinnemann, who was standing along the running board on the driver's side of the car. Mr. Kinneman backed up, took out his handkerchief and wiped blood from his upper lip, and Mrs. Dybens turned to appellant and said, "Look what you have done." Mr. Kinnemann then said, "Yes . . . I am going to call the cops"; and appellant said, "Why, you," opened the door of his car and chased Mr. Kinnemann across the street, Mrs. Dybens following. While on the parkway in front of Mr. Gilliam's residence, appellant struck deceased several times, the latter falling to the ground. Mrs. Dybens took appellant's arm and asked him not to hit deceased again, but he shoved her aside and said, "Leave me alone." All of this affray took place in front of and in the driveway of the house occupied by Mr. Gilliam, who hearing the deceased call for help went to his aid. Appellant had hold of deceased, who was slumped to the ground, and Mrs. Dybens was holding appellant by the arm and was pleading with him not to hit deceased any more, but he told her to let him go or he would give her the same thing he had given to Mr. Kinnemann. Appellant also turned to Mr. Gilliam and told him to "get the hell back into the house and stay there", and as Mr. Gilliam went into the living room of his home he saw the three, appellant, deceased and Mrs. Dybens going back across the street to appellant's car. However, as Mr. Gilliam resumed his seat and picked up a magazine he had been reading, he saw two heads go by the kitchen door and getting up and going to the door, he saw appellant fall on top of deceased, whereupon he called out, "Boys, stop your

fighting; cut out your noise." Appellant replied, "Don't you call no cops; so stay inside or I will take a pop at you." While deceased was on the ground and appellant was standing over him, appellant hit deceased first right and then left and appeared to be beating him in the face or head, and also kicked him.

Appellant then left the scene. Mr. Gilliam rushed out of his house and, finding Mr. Kinnemann unconscious and his pulse quite weak, he bathed his face with a wet towel and called police. By the time the officers arrived, a doctor, who had also been summoned, pronounced Mr. Kinnemann dead.

After leaving the scene, appellant and Mrs. Dybens proceeded to a cocktail lounge where they had more drinks, and when they were leaving that place around 10:30 o'clock that evening, appellant was arrested and charged with the homicide.

The county autopsy surgeon testified that the prime cause of death was concussion of the brain and subdural hemorrhage.

Appellant here urges that the verdict of guilty is contrary to the law and the evidence, contending that deceased was the aggressor in the fatal affray and that appellant was acting in his own defense.

This contention is not borne out by the record herein which discloses that deceased was a man sixty-one years of age, five feet five inches in height, weighing one hundred eighteen pounds; that he shook his finger at appellant and told him he could not marry Mrs. Dybens, calling the latter a "damn fool." Moreover, deceased backed away from the automobile after appellant struck him the first time, and so far as the record shows no blow was ever struck by deceased during the course of the altercation.

Appellant, on the other hand, was a miner employed at the Monte Cristo Mine at Palmdale, and when deceased threatened to call the police after he was hit the first time, appellant jumped out of his car and took after deceased, and thereupon administered the beating resulting in the latter's death.

The evidence adduced at the trial herein is not only amply sufficient, but conclusively points to the guilt of appellant.

There was no error in the admission or the rejection of evidence and the jury was properly instructed by the court. The appeal is destitute of merit.

For the reasons stated, the judgment and order appealed from are, and each of them is, affirmed.

Doran, J., and White, J., concurred.